UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ASSIST-2-SELL, INC., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | |
| ) | No. 1:05-CV-193 |
| ) | |
| ASSIST-2-BUILD, LLC; ASSIST-U-REALTY ) | Judge Curtis L. Collier |
| LLC; ANGELA OLIVER; and, TERRY ) | |
| OLIVER, ) | |
| ) | |
| Defendants/Counter-Plaintiff. ) | |

## **M E M O R A N D U M**

Before the Court is the Motion to Dismiss Defendants' Counterclaim (Court File No. 13) filed by Plaintiff Assist-2-Sell, Inc. ("Plaintiff"). Plaintiff filed a memorandum in support of its motion (Court File No. 14). Defendants Assist-2-Build, LLC; Assist-U-Realty, LLC; Angela Oliver; and Terry Oliver (collectively "Defendants") filed a response (Court File No. 18) and Plaintiff filed a reply (Court File No. 21).

Plaintiff contends Defendants' counterclaim should be dismissed because it fails to state a claim upon which relief may be granted. For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's motion to dismiss. The Court will **GRANT** Plaintiff's motion with respect to the tortious interference claim based on the filing of the present lawsuit but the Court will **DENY** the motion with respect to the other tortious interference claims and the defamation claim.

I.  **RELEVANT FACTS**

Plaintiff is "a corporation engaged in the business of granting franchises that provide real estate consulting and brokerage services..." (Court File No. 14, p. 1). Plaintiff has federally registered service marks[1] including ASSIST 2 SELL® and SELLER ASSIST REALTY ® (Court File No. 1, Complaint, at ¶ 8). Defendants started a business in Chattanooga, Tennessee on January 4, 2005[2] and named the business Assist-2-Build, LLC (Court File No. 9, Counterclaim, Section II). The purpose of the business was to assist homeowners through the process of building a home (*Id.* at Section III). Specifically, Defendants wanted to provide consulting services to new home builders (*Id.*).

Plaintiff advised Defendants they were infringing on its trademarks in January 2005 and requested Defendants cease using names confusingly similar to Plaintiff's service marks (Court File No. 14, p. 2; Court File No. 25, Amended Complaint, ¶ 17; Court File No. 9, Answer, ¶ 17). To avoid litigation, Defendants ceased business as "Assist 2 Build, LLC" (Court File No. 9,

---

[1] A service mark is defined as follows:

> [A]ny word, name, symbol, or device, or any combination thereof– (1) used by a person, or (2) which a person has a bona fide intention to use in commerce and applies to reigster on the principal register established by the Trademark Act, to identify and distinguish the services of one person...from the services of others and to indicate the source of the services, even if that source is unknown.
>
> . . .

Black's Law Dictionary 1369 (Sixth ed. 1990).

[2] It is unclear from Defendants' answer/counterclaim when Assist-2-Build, LLC was formed. In the first part of the answer, Defendants state Assist-2-Build was formed "on or about October 6, 2004" (Court File No. 9, Counterclaim, ¶ 15). Yet, in the counterclaim, Defendants aver Assist-2-Build was formed "on or about January 4, 2005" (*Id.* at Section II).

Counterclaim, Section VI). The Defendants shortly thereafter formed "Assist-U-Realty, LLC" and a few months later formed "Realty Gallery Signature, LLC" (*Id.* at Section VII).

Sometime after Plaintiff warned Defendants to stop infringing its service marks, Plaintiff's Chattanooga franchisee, Buyers & Sellers Smart Choice, LLC ("B&SSC") and/or B&SSC's owner, Mitch Everhart, sent agents to one of Defendants' open houses to disrupt a potential sale (*Id.* at Section VIII). As part of the disruption, Lance Hatfield, an agent for B&SSC "made false statements disparaging [Defendants] and verbally assaulted [Defendants]..." (*Id.*). Also, in an attempt to further disrupt Defendants' business, B&SSC, Mr. Everhart, and Mr. Everhart's agents removed Defendants' signs in the Chattanooga area (*Id.*). Defendants requested B&SSC and Mr. Everhart "cease and desist from interfering with [Defendants'] business" (*Id.*). No one responded to this request and the disruption of Defendants' business continued (*Id.*). In May 2005, Defendants advised Plaintiff the names Assist-2-Build, LLC and Assist-U-Realty, LLC were no longer going to be used because Defendants were selling their business to an entity that would not be using either name (*Id.* at Section X; Court File No. 25, Amended Complaint, Exh. H, pp. 1-2). However, Defendants did not tell Plaintiff the exact date the names would no longer be used (Court File No. 25, Amended Complaint, Exh. H, p. 2). Defendants would only commit to stop using the names sometime in 2005 (*Id.* at p. 8).

Although it appeared the names Assist-2-Build and Assist-U-Realty would not be used much longer, Plaintiff filed suit against Defendants for infringement of Plaintiff's service marks and for unfair competition on July 11, 2005. Defendants filed a counterclaim against Plaintiff and a third party complaint against Mitch Everhart and B&SSC for tortious interference with business relationships and defamation. Plaintiff moved to dismiss Defendants' counterclaim under Federal

3

Rule of Civil Procedure 12(b)(6).

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998); *State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc.*, 856 F. Supp. 1229, 1232 (S.D. Ohio 1994), accept all the complaint's factual allegations as true, *Bloch*, 156 F.3d at 677; *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994), and determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957); *see also Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *Coffey v. Chattanooga-Hamilton County Hosp. Auth.*, 932 F. Supp. 1023, 1024 (E.D. Tenn. 1996).  The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations.  *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should neither weigh evidence nor evaluate the credibility of witnesses); *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990).  Rather, the Court must liberally construe the complaint in favor of the party opposing the motion and may dismiss the case only where no set of facts could be proved consistent with the allegations which would entitle the plaintiff to a recovery.  *Hishon v. Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984); *Miller*, 50 F.3d at 377.

In deciding a motion to dismiss, the question is "not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); *see also Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002). However, bare assertions of legal conclusions are insufficient. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). The "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (emphasis in original).

### III. DISCUSSION

Plaintiff moves to dismiss Defendants' counterclaim for failing to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Plaintiff argues (1) Defendants' claims for tortious interference with business relations (a) were not properly pleaded, and (b) violate the *Noerr-Pennington* Doctrine; and (2) Defendants' claim for defamation was not properly pleaded (Court File No. 14). The Court will address each of these arguments in turn.

#### A. Tortious Interference With Business Relations

##### 1. Pleading Deficiencies

Plaintiff contends Defendants' claims for tortious interference with business relations must be dismissed because Defendants failed to plead all of the necessary elements. Defendants argue their business relationships were interfered with when Plaintiff filed the current lawsuit, when Defendants' signs were stolen, and when Defendants' open house was disrupted. In order to recover for tortious interference with business relationships in Tennessee, a plaintiff must prove (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant was aware of the relationship; (3) the defendant intended to induce a breach or terminate the relationship; (4) the defendant's improper motive or
5

improper means; and (5) damages resulting from the tortious interference. *Trau-Med of Amer., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002). Plaintiff argues Defendants have not alleged elements (3) or (4) for any of their tortious interference claims. Also, Plaintiff asserts Defendants' claim for tortious interference based on the disruption of the open house and the taking of the signs cannot meet elements (1) or (5).

### a) Intent

Plaintiff avers the Defendants have not alleged intent so their claims for tortious interference with business relationships should be dismissed. Plaintiff relies on *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 2004 WL 383313, (Tenn. Ct. App. Feb. 27, 2004). In *Overnite*, the complaint stated "Defendants' misconduct was intentional and interfered with the employment relationship between Overnite and its employees by adversely impacting the safe work environment that Overnite maintains for its employees." *Id.* at *13. The *Overnite* court reasoned the complaint failed to state a cause of action for tortious interference because the complaint only alleged intentional conduct that incidentally affected a business relationship instead of alleging the defendant intentionally caused a breach in Overnite's business relationships. *Id.*; *see also Lee v. State Volunteer Mut. Ins. Co.*, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005) (affirming dismissal of a tortious interference with the performance of a contract claim because the plaintiff did not allege specific facts that would support each of the elements of the tort); *Shaker v. Village Voice Media, Inc.*, 2005 WL 1277730, at *3 (N.D. Ohio May 26, 2005) (dismissing intentional interference with business relations claim under Ohio law because the plaintiffs merely stated defendants conduct was "willful, wanton, reckless and/or malicious" but never alleged defendant intended to cause their termination).

6

Here, Defendants claim Plaintiff's agents, B&SSC and Mr. Everhart, "intentionally interfered with [Defendants'] businesses" (Court File No. 9, Counterclaim, Section VII).[3] Allegedly, B&SSC and/or Mr. Everhart sent people to one of Defendants' open houses to disrupt a sale and B&SSC and/or Mr. Everhart stole some of Defendants' signs in the Chattanooga area (*Id.* at Sections VII, VIII). Lastly, Defendants claim Plaintiff's current lawsuit is frivolous and "continues to disrupt the [Defendants'] business." Further Defendants state "[b]ecause this lawsuit was filed, the sale [of their business] has fallen through" (*Id.* at Section X).

Unlike *Overnite*, Defendants' specifically allege B&SSC and Mr. Everhart intentionally interfered with their business relations. Therefore, intent to interfere with Defendants' business relations has sufficiently been alleged for B&SSC's and Mr. Everhart's actions in removing signs and disrupting one of Defendants' open houses. However, like *Overnite*, Defendants' statements regarding Plaintiff's lawsuit are inadequate. Defendants merely allege the filing of the lawsuit caused the sale of the business to fall through and the presence of the current lawsuit continues to disrupt Defendants' business. Defendants do not specifically allege Plaintiff intentionally interfered with any of Defendants' business relations when it filed the current lawsuit. Further, the Court cannot infer an intent to interfere from the facts of this case. Plaintiff clearly wanted Defendants' to sell their business because as soon as the business was sold, the infringing marks would no longer

---

[3] Plaintiff argues for the first time in its reply brief Defendants have only alleged a franchisor-franchisee relationship between Plaintiff and B&SSC which is insufficient by itself to create a principal-agent relationship. Defendants have not had a chance to respond to this argument. Further, it is possible for a principal-agent relationship to exist when there is a franchisor-franchisee relationship. *See Raines v. Shoney's, Inc.,* 909 F. Supp. 1070, 1078 (E.D. Tenn. 1995); *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986); *Franklin Distrib. Co. v. Crush Int'l*, 726 S.W.2d 926 (Tenn. Ct. App. 1986). As such, for purposes of the current motion to dismiss, the Court will treat B&SSC and Mr. Everhart as agents of Plaintiff. If Plaintiff wishes to raise the agency issue in the future, it is free to do so.

be used. Thus, with respect to the filing of the lawsuit, Defendants have failed to state a cause of action for intentional interference with business relations. *See Maltz v. Union Carbide Chemicals & Plastics Co.*, 992 F. Supp. 286, 313 (S.D.N.Y. 1998) (stating "[u]niformly, intent to interfere with the...business relationship is considered the *sine qua non* of the torts, and it therefore must be pleaded in the compliant in order to escape dismissal"). Accordingly, the Court will **DISMISS** the portion of Defendants' counterclaim regarding tortious interference with respect to Plaintiff's action in filing the current lawsuit.

### b) **Improper Motive and Improper Means**

Next, Plaintiff contends Defendants have failed to allege improper motive and improper means. In response, Defendants again point to the stealing of the signs, disrupting of the open house, and the filing of this lawsuit. In *Trau-Med*, the Tennessee Supreme Court gave the following insights into improper motive and means:

> It is clear that a determination of whether a defendant acted "improperly" or possessed an "improper" motive is dependent on the particular facts and circumstances of a given case, and as a result, a precise, all-encompassing definition of the term "improper" is neither possible nor helpful. However, with regard to improper motive, we require that the plaintiff demonstrate that the defendant's predominant purpose was to injure the plaintiff. ...
>
> Moreover, in the attempt to provide further guidance, we cite the following methods as some examples of improper interference: those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules...violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship...and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition....

*Trau-Med*, 71 S.W.3d at 701, n.5. Here, the stealing of the signs would fit into the "illegal" category and Defendants claim they were defamed at the open house. Also, it can reasonably be inferred

8

Plaintiff's predominate purpose in allowing its agents to steal Defendants' signs and disrupting Defendants' open house was to injure Defendants. Thus, Defendants have properly pleaded improper motive and improper means for tortious interference with prospective business relations based on the stealing of the signs and the disrupting of the open house.

As for the filing of the current lawsuit, Defendants assert Plaintiff's claim is frivolous which the Court believes is essentially another way of saying "unfounded litigation." *See Id.* Nevertheless, since the Court concluded above Defendants failed to properly plead intent, the tortious interference claim based on the filing of the lawsuit will be dismissed.

### c). Identifiable Class of Third Persons and Damages

Since the Court believes Defendants pleaded sufficient facts to infer intent and improper motive/means for B&SSC's and Mr. Everhart's actions in disrupting the open house and taking of the signs, it will now address Plaintiff's arguments that Defendants failed to allege facts sufficient to show (1) Defendants had a prospective business relationship with an identifiable class of third persons; and (2) Defendants suffered damages from the disruption of the open house and/or the taking of signs (Court File No. 14, p. 9, n.5).[4] The Court notes Defendants did not respond to the the business relationship with an identifiable class of third persons argument (*See* Court File No. 18, pp. 2-4).

---

[4] The Tennessee Supreme Court in *Trau-Med* stated a tortious interference with business relationships claim can be established when a claimant shows an existing business relationship with specific third parties *or* a prospective relationship with an identifiable class of third persons. *Trau-Med*, 71 S.W.3d at 701. In this case, the taking of the signs and the disruption of the open house appear to only raise an issue of interference with *prospective* relationships. To the extent Defendants have sought to base these claims on interference with *existing* business relationships, the claims must fail because Defendants have not attempted to identify any existing business relationships with specific third parties nor have sufficient facts been pleaded to lead the Court to conclude any existing relationships were interfered with.

Despite Defendants failure to respond, determining whether B&SSC's and Mr. Everhart's alleged actions in disrupting the open house and taking Defendants' signs possibly interfered with a prospective business relationship with an identifiable class of third persons is not particularly easy. Tennessee courts have not really explored the nature of the prospective business relationship required to satisfy this element of the tort or how identifiable the class of third persons must be. However, enough has been said by Tennessee courts and other state courts to make a reasoned decision. In *Trau-Med*, the Tennessee Supreme Court expressly adopted Section 766B comment c of the Restatement (Second) of Torts. *Trau-Med*, 501 S.W.3d at 701, n.4. This comment provides in relevant part:

> The relations protected against intentional interference by the rule stated in this Section include any prospective contractual relations, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff. Included are interferences with the prospect of obtaining employment or employees, the *opportunity* of *selling* or buying land or chattels or *services*, and any other relations leading to potentially profitable contracts. ...

Restatement (Second) of Torts § 766B cmt. c (1977) (emphasis added). In Tennessee, intentional interference with the *opportunity* of selling services amounts to an interference of a "business relationship". In this case, the taking of the Defendants signs could have deprived Defendants of the opportunity to sell their services. One possible way of selling consulting services for the construction of a new home would be to place a company sign outside of a current client's home for other potential home builders to see. Likewise, disturbing an open house where potential clients may be present may have deprived Defendants the opportunity of selling their services. The taking of the signs and disruption of the open house, if true, could have interfered with a prospective business relationship.

A harder question is whether B&SSC's and/or Mr. Everhart's actions possibly interfered

10

with an identifiable class of third persons. It is unclear whether persons driving by Defendants signs or attending an open house are identifiable under Tennessee law because no Tennessee court has defined "identifiable". The Tennessee Supreme Court's use of the word "identifiable" is an attempt to place some limits on a tortious interference with *prospective* business relations claim. Tennessee is not alone in placing limits on this tort. For example, in Illinois, to recover for interference with prospective business relations, a plaintiff must demonstrate the existence of third parties who actually contemplated a business relationship with the plaintiff. *See, e.g., Werblood v. Columbia College of Chicago*, 536 N.E.2d 750, 755 (Ill. App. Ct. 1989). The reasoning for this limitation is liability for tortious interference with prospective business relations could be without limit and impossible to calculate if all potential relationships provided a basis for recovery. *See Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1126, n. 19 (N.D. Ill. 1995). Other states have likewise placed some limitation, albeit in different ways, on tortious interference with prospective business relations claims. *See, e.g., Galardi v. Steele-Inman*, 597 S.E.2d 571, 522 (Ga. Ct. App. 2004) (stating "[t]o establish a cause of action for interference with prospective business relations, [plaintiff] was required to demonstrate that absent the interference, those relations were reasonably likely to develop in fact"); *Meyer Land & Cattle Co. v. Lincon County Conservation Dist.*, 31 P.3d 970, 975 (Kan. Ct. App. 2001) (requiring the expectancy of a business relationship "with the probability of future economic benefit to the plaintiff"); *Adkins v. Gen. Motors Corp.*, 556 F. Supp. 452 (S.D. Ohio 1983) (dismissing a tortious interference claim under Ohio law where the plaintiffs failed to identify unnamed third parties in the complaint); *Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 982 P.2d 853, 887 (Haw. 1999) (requiring "a reasonable probability of [prospective relationship] maturing into a future economic benefit to the plaintiff").

Although Tennessee's attempt to place some limitation is in line with other states, its limitation is somewhat unique. It is telling that a plaintiff in Tennessee needs to identify "specific third parties" for an *existing* business relationship but only a "class of third persons" for *prospective* business relationships. *Id.* This difference suggests Tennessee does not require a plaintiff to identify specific individuals when making a tortious interference with prospective business relations claim. Further, the Tennessee Supreme Court used the word "identifiable" instead of "identified" also suggests a plaintiff need not name a specific person in the initial stages of litigation. *See Crinkley v. Dow Jones & Co.*, 385 N.E.2d 714, 721 (Ill. App. Ct. 1978). Accordingly, it would be inappropriate to require Defendants to name specific third parties to survive a motion to dismiss.

Further, the Court concludes Defendants' failure to name even a class of third persons does not require dismissal at this stage of litigation. In federal court, a plaintiff need only make "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). Although Defendants allegations are general, "general factual allegations of injury resulting from the defendant's conduct may suffice at the pleading stage to state a claim for which relief can be granted." *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1279 (10th Cir. 2000) (citation omitted). It can reasonably be inferred from Defendants' counterclaim potential homebuilders and persons in need of realty consulting services (*i.e.* identifiable classes of third persons) did not enter into business relationships with Defendants because of B&SSC's and Mr. Everhart's conduct in stealing signs and disrupting Defendants' open house. Also, as already discussed, the Tennessee Supreme Court chose to use the word "identifiable" instead of "identified" suggesting at this stage of litigation it is not necessary for a plaintiff to name classes of third persons.

With respect to the damages element, Defendants need not allege specific damages at the

12

pleading stage to state a cause of action for tortious interference with business relations. Clearly, if a person did not contract with Defendants because he or she did not see a sign or a potential customer upon hearing disparaging comments about Defendants at an open house decided not to contract with Defendants, damages would be present. Further, with respect to the stealing of the signs, Defendants have specifically requested damages to replace the stolen signs.

In sum, Defendants have properly pleaded a tortious interference with prospective business relations with respect to the stealing of the signs and the disruption of the open house.

### 2. Noerr-Pennington Doctrine

Plaintiff asserts it is immune from Defendants' claim for tortious interference with business relations with respect to the filing of the current lawsuit under the *Noerr-Pennington* doctrine. *Noerr-Pennington* immunity essentially protects First Amendment efforts to influence governmental action through lobbying, litigation, and other activities. *See Prof'l Real Estate Investors, Inc. v. Columbia Picture Indus.*, 508 U.S. 49, 56-57 (1993). *Noerr-Pennington* immunity has been extended by some courts to tortious interference actions. *See, e.g., Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999); *Melea Ltd. v. Quality Models Ltd.* 345 F.Supp. 2d 743, 758-59 (E.D. Mich. 2004). There is an exception to the *Noerr-Pennington* doctrine for "sham" litigation. *Prof'l Real Estate Investors, Inc.*, 508 U.S. at 57. However, since the Court has already determined Defendants' claim for tortious interference based on Plaintiff's filing of the present lawsuit will be dismissed, the Court need not address whether the *Noerr-Pennington* doctrine applies to Defendants' counterclaim.

### B. Defamation

As a preliminary matter, the Court notes in Defendants' counterclaim a request for damages

resulting from Plaintiff's "libel" is made (Court File No. 9, Counterclaim, Section X, ¶ 3). The Court is puzzled by Defendants use of the word libel. Nowhere have Defendants alleged Plaintiff or an agent of Plaintiff wrote, printed, or signed anything false and defamatory. *See Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) (stating "[l]ibel and slander are both forms of defamation; libel being written defamation and slander being spoken defamation"). The most logical explanation is Defendants erred in their language and meant to say slander or defamation instead of libel.

Plaintiff moves to dismiss any slander claim made against it by Defendants. Again, the applicable standard here is Rule 8(a)(2) which simply requires a "short and plain statement." Fed. R. Civ. P. 8(a)(2); *Wright v. Sodexho Marriot Servs.*, 30 Fed. Appx. 566, 567 (6th Cir. 2002) (unpublished opinion). There is no heightened pleading standard for slander in federal court. *Andresen v. Diorio*, 349 F.3d 8, 17-18 (1st Cir. 2003).[5] In Tennessee, to establish a *prima facie* case of defamation against a private figure a plaintiff must prove:

> (1) a party published a statement;
> (2) with knowledge that the statement was false and defaming to the other or with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement;
> (3) the defamation resulted in an injury to the person's character and reputation; and
> (4) actual damages

*Id.* Defendants' defamation claim principally rests, at this point in the litigation, on the following language:

> Lance Hatfield, an agent for [B&SSC] made false statements disparaging [Defendants] and verbally assaulted [Defendants] while

---

[5] Plaintiff cites almost exclusively to Tennessee cases which require more than a short and plain statement in slander cases. However, Tennessee's pleading standards do not apply in this case. *See Andresen*, 349 F.3d at 17.

14

in the middle of a sale.

(Court File No. 9, Counterclaim, Section VIII). Obviously, the substance of the allegedly slanderous comments have not been stated nor has it been alleged a third party was present when the statements were made. However, these things are not necessarily required. Making false and disparaging statements at an open house likely was done in the presence of a third party, therefore the publication element could be satisfied. Further, disparaging statements made at an open house may have damaged Defendants' reputation thereby potentially satisfying element three. Also, Defendants have specifically requested damages for defamation which suggests Defendants' suffered actual damages. Lastly, taking the counterclaim as a whole, it can be inferred the false and disparaging statements were intentionally or negligently made. According to Defendants B&SSC and/or Mitch Everhart was trying to disrupt their business by attending the open house. This implies the false statements were made intentionally. Accordingly, the Court will **DENY** Plaintiff's motion to dismiss Defendants' defamation claim.

**IV.    CONCLUSION**

Defendants have properly pleaded tortious interference claims based on the stealing of the signs and the disruption of the open house. Further, Defendants properly pleaded a claim for slander. Accordingly, Plaintiff's motion to dismiss will be **DENIED IN PART**. However, Defendants did not properly plead a claim for tortious interference based on Plaintiff's filing of the current lawsuit, therefore Plaintiff's motion will be **GRANTED IN PART**.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**